IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSTY AARON E.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 6:23-cv-01559-HZ

OPINION & ORDER

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, OR 97293

      Attorneys for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Katherine B. Watson
Office of the General Counsel, SSA
Office of Program Litigation, Office 7
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Rusty E. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g)(incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on October 31, 2019, alleging an onset date of August 1, 2019. Tr. 32, 220.[2] His application was denied initially and on reconsideration.

On March 16, 2022, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 57-89. On May 4, 2022, the ALJ found Plaintiff not disabled. Tr. 29-52. The Appeals Council denied review. Tr. 5-10.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "chronic migrain[es], bad hip, [and] shoulder problems." Tr. 91. At the time of his alleged onset date, Plaintiff was 29 years old. Tr. 220. Plaintiff has a high school education and no past relevant work experience. Tr. 50, 243.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his October 31, 2019, alleged onset date. Tr. 34. At steps two and three, the ALJ determined that Plaintiff has the severe impairments of "migraines; learning disability; depression; post-traumatic stress disorder ('PTSD'); knee disorder with quad and calf atrophy; right knee sprain; right shoulder disorder; and history of left little finger cellulitis." Tr. 34. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 35. The ALJ concluded that Plaintiff has the residual functional capacity to perform a light work with the following limitations:

> [Plaintiff] can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours and sit for about six hours in an eight hour workday with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; can frequently but not constantly reach overhead with the right upper extremity; have occasional exposure to extremes of hot and cold; occasional exposure to wetness or humidity; occasional exposure to extreme noise (able to work in a moderate noise level or less); occasional exposure to flashing lights; occasional exposure to environmental irritants such as fumes, odors, dusts, and gases; no work outside in bright sunlight; can have occasional use of moving hazardous machinery; and occasional exposure to unprotected heights. [Plaintiff] can understand, remember, and carry out instructions that can be learned in up to and including 30 days of on the job training; can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work; can have superficial, but no direct interaction with the public; occasional interaction with co-workers and supervisors; and can adapt to occasional changes in the workplace.

Tr. 38-39. At step four, the ALJ concluded that Plaintiff has no past relevant work. Tr. 50. At step five, the ALJ found that Plaintiff could perform other work in the national economy. Tr. 50. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. 51.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when she partially rejected Plaintiff's statements and testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "The ALJ 'engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.'" *Putz v. Kijakazi*, No. 21-35733, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022)(quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). First the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to

produce the pain or other symptoms alleged." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quotation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear[,] and convincing reasons for doing so." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(quotation omitted). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

On November 27, 2019, Plaintiff completed an Adult Function Report in which he stated he did not "take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other." Tr. 249. Plaintiff stated he cared for his dog including "feeding, watering, taking potty." *Id*. Plaintiff was able to "roof, work on vehicles, go up latter [*sic*], [be] around strong odors, [be around] bright lights, carry[] on ca conversation" before his condition began. *Id*. Plaintiff noted he did not have any problems with personal care or need special reminders to take

care of personal needs or grooming. Plaintiff stated he did not prepare meals because he "get[s] to [*sic*] dizzy and . . . [his] knees and hips go out." Tr. 250. Plaintiff said he does not do any household chores because he "can't overexert [him]self" due "to illness." Tr. 251. Plaintiff stated he shopped for "basic needs" "weekly" for "about half hour." *Id.* Plaintiff, however, only went outside "if its [*sic*] not too bright and . . . always [has] to wear sunglasses" and he does not go out alone "because [he is] forgetful and forget[s] stuff." *Id.* Plaintiff stated he spends time with others "hang[ing] out at home," but does not do that often due to headaches. Plaintiff noted he can walk 20 feet before needing to stop and rest, can resume walking after "20 min. or longer depending on headache"; is able to pay attention "not long"; and does not follow written or spoken instructions, get along with authority figures, or handle stress "well." Tr. 253-54.

    On July 27, 2020, Plaintiff filed out Pain Report and an Adult Function Report in which he stated he has suffered from "unusual fatigue" since 2018, requires naps or rest twice or more per day for "about 1 hour." Tr. 278. Plaintiff described his pain and other symptoms as "chronic headaches, nerve damage to the left side, shoulder problems and knee problems and stomach problems" that cause him to have pain "all day, every day" caused by "everything [he] do[es]." *Id.* Plaintiff estimated he could stand/walk five minutes and sit for 20 minutes "before pain occurs" and other than medication what helps alleviate pain is "laying down." Tr. 279. Plaintiff stated that his daily activities include helping his wife care for their "new son" and caring for his dog. Plaintiff indicated he has no problems with personal care, but needs reminders to take his medication. Plaintiff makes "complete meals w/several courses, frozen dinners, [and] sandwiches" daily, does laundry once per week, checks the mail daily, shops in stores for food and baby things, spends time with others on the telephone or by text, and goes to lake with others "once a month." Tr. 283-84. Plaintiff does not do yard work because he gets too dizzy and has

7 – OPINION & ORDER

bloody noses, he can walk less than a mile without stopping and has to rest for 30 minutes before resuming. Plaintiff does not follow written instructions, handle stress, get along with authority figures, or handle changes in routine well. Tr. 285-86.

At the March 16, 2022 hearing Plaintiff testified that he stopped working as a roofer in 2019 when he "almost fell off a two-story roof because [he] got a little lightheaded and dizzy because of [a] headache." Tr. 71. Plaintiff stated that he had been working full-time as a roofer at the time he stopped working and he was not working off the books. The ALJ noted the record did not reflect earnings that would suggest full-time work during 2019 and, in fact, it did not reflect that Plaintiff ever "earned . . . substantial gainful activity." Tr. 71-72.

Plaintiff testified that when he goes out of the house he has to wear sunglasses because sunlight and lights in stores "set[] [his] headaches . . . off." Tr. 67. Plaintiff stated that since he had a car accident in 2018 his pupils "don't dilate." *Id*. Plaintiff said his eye doctor did not "tell [him] anything about" his diagnosis, but he sees his eye doctor annually. Plaintiff testified that he does not drive because his license was suspended in connection with the 2018 accident when he was driving without insurance. Tr. 69. Plaintiff, however, intended to get his license back in August 2022. Plaintiff estimated that he could walk for 20 minutes at which point he would have to sit down because his knee would be "throbbing pretty good." Tr. 73. The ALJ noted there was "some mention in the file that [Plaintiff] [was] a pretty avid exerciser, a heavy exerciser." Tr. 73. Plaintiff testified that he meant he "climb[ed] ladders all day[,] pick[ed] up 80-pound/85-pound shingles[, and] lift[ed] up tarps with two people. . . . [Roofing] was exercise work." Tr. 73.

Plaintiff stated he usually takes his headache medication when he wakes up and he and his wife change their toddler son who then "runs off and plays." Tr. 65. Their seven-year old gets dressed "and goes to school on the computer." *Id*. Plaintiff makes the children cereal for

8 – OPINION & ORDER

breakfast and something like chicken nuggets for lunch. Plaintiff prepares dinners two nights each week if dinner is not a "super hard thing [that he] can remember how to cook." *Id.* Plaintiff's wife works full time from home on the computer while Plaintiff "sit[s] on the couch, making sure that [his] son doesn't get into the kitchen area." *Id*. Plaintiff does laundry once per week and sweeps the floors. Tr. 74.

Plaintiff testified that he takes topiramate, uses medical cannabis, and has Botox injections to treat his headaches. They "take the pain down a little bit, but [he] still [has] headaches." Tr. 74. Plaintiff can "go maybe a week and then [he] [has] . . . four days or five days, maybe a week with a pounding headache[]. . . . It's off and on when [his] . . . headaches are there." Tr. 75. Plaintiff stated his headaches "pound on this side of the head where the nerve damage is." Tr. 77. Plaintiff testified that his "head doctor said they have a 50-50 chance they can go in and do surgery and fix it and have worse headaches or have none" so he has elected not to have surgery. Tr. 77.

Plaintiff cannot take care of his children when he has bad headaches. He sits on the couch and falls asleep. His wife takes the day off work and cares for the children. *Id.* Plaintiff stated that he does not know of any side effects of his headache medications, but if he does not get the medications filled or he runs out he will get a pounding headache for two weeks. Tr. 76.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 40. The ALJ noted that on September 16, 2020, Plaintiff began physical therapy and told his physical therapist that Plaintiff had been in a car accident "several years ago and report[ed] being injured and 'pronounced dead

at the scene.'" Tr. 518. Plaintiff's emergency room records from February 9, 2018, however, note Plaintiff "state[d] he got out of his car after the accident. [He] report[ed] right hip pain. He deni[ed] head, neck, or back pain." Tr. 710. Plaintiff was examined; given an x-ray, which had negative results; and was discharged. Tr. 711. The ALJ also noted that Plaintiff testified he had nerve damage on the side of his head, but the medical record does not reflect any findings of nerve damage or that medical professionals discussed surgery related to Plaintiff's headaches. Tr. 43.

The record reflects, contrary to Plaintiff's testimony that his pupils do not dilate, that on September 17, 2019, treating neurologist Weijia Wang, M.D., noted both of Plaintiff's pupils were "normal size and reactive to light and dark," Plaintiff had "normal optic vessels," and his "fundoscopic exam [was] grossly normal." Tr. 693. These findings were repeated on every examination by Dr. Wang through February 13, 2020. *See, e.g.,* Tr. 652-53, 665, 669, 675-76, 681, 685, 689.

The ALJ noted that contrary to Plaintiff's statements indicating that he does not follow written or oral instructions well, Zane Curtis, M.D., noted at Plaintiff's June 14, 2021, psychological evaluation that Plaintiff was able to "understand, retain and follow instructions" as "evidenced by [his] ability to understand and follow all of [Dr. Curtis's] instructions throughout the interview" and "to coordinate [his] schedule in a manner in which [he was] able to arrive to [his] appointment at the correct location, on the correct date, and at the correct time." Tr. 497. Dr. Curtis also noted Plaintiff was able "to perform the simple and repetitive task[s] in the interview" and "endorse[d] . . . capability of using a phone, making change, using a computer, reading a map, cooking, doing laundry, caring for pets, washing dishes, driving, [and] shopping." *Id*.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ provided clear, and convincing reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: October 31, 2024

MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER